UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

_____  :
                                       :
TYNISA WILLIAMS and                    :
SHAWN BEALER, both individually and    :
on behalf of a class of others similarly :
situated,                              :
                                       :
                Plaintiffs,            :
                                       :
        v.                             :        No. 1:09-CV-2991
                                       :
THE CITY OF CLEVELAND,                 :        The Honorable Benita Y. Pearson
                                       :
                Defendant.             :
_____  :

**PLAINTIFF TYNISA WILLIAMS' MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND FOR A PERMANENT
INJUNCTION**

Respectfully Submitted By:

Elmer Robert Keach, III, Esquire
Member of the Bar, USDC, ND Ohio
LAW OFFICES OF ELMER ROBERT
    KEACH, III, PC
One Pine West Plaza
Suite 109
Albany, NY  12205
Telephone:    518.434.1718
Telecopier:   518.770.1558
Electronic Mail:
bobkeach@keachlawfirm.com

Nicholas Migliaccio, Esquire
MIGLIACCIO LAW FIRM, PLLC
438 16th Street SE
Washington, DC  20003
Telephone:    202.470.3520

Telecopier:    202.800.2730
Electronic Mail:
nmigliccio@classlawdc.com

D. Aaron Rihn, Esquire
ROBERT PEIRCE & ASSOCIATES, PC
2500 Gulf Tower
707 Grant Street
Pittsburgh, PA  15219
Telephone:    412.281.7229
Telecopier:    412.281.4229
Electronic Mail:
arihn@peircelaw.com

Daniel Karon, Esquire
KARON LLP
700 West St. Clair Avenue
Suite 200
Cleveland, OH  44113
Telephone:    216.622.1851
Telecopier:    216.241.8175
Electronic Mail:
dkaron@karonllc.com

**ATTORNEYS FOR PLAINTIFF
TYNISHA WILLIAMS**

<u>TABLE OF CONTENTS</u>

Introduction...........................................................................................................................1

Statement of Facts.................................................................................................................2

    A.  *The City of Cleveland's Acknowledged Delousing Procedures, Alleged Justification and Reasonable Alternatives*..........................................................................................................3

    B.  *The City of Cleveland's Acknowledged Group Strip Search Procedures, the Alleged Justification, and Reasonable Alternatives*..........................................................................6

    C.  *The City of Cleveland's Acknowledged Group Strip Search Procedures, the Alleged Justification, and Reasonable Alternatives*.....................................................................10

    D.  *Procedural History* ...............................................................................................14

Standard of Review.............................................................................................................15

Argument .............................................................................................................................15


POINT I

    THE CITY OF CLEVELAND'S DELOUSING REGIMEN IS PATENTLY ILLEGAL. THE CITY HAS FAILED TO PROVIDE ANY JUSTIFICATION FOR ENGAGING IN COMPULSORY PHYSICAL DELOUSING OTHER THAN VAGUE ALLEGATIONS THAT INMATES WOULD NOT COOPERATE WITH A LESS ONEROUS DELOUSING REGIMEN ..............................................................................................16


POINT II

    THE CITY OF CLEVELAND'S GROUP STRIP SEARCH REGIMEN IS PATENTLY ILLEGAL. THE CITY HAS ADMITTED THAT A PRIVACY CURTAIN OR PARTITION CAN EASILY BE INSTALLED IN THE CLOTHING ROOM THAT WOULD PROVIDE DETAINEES WITH PRIVACY WHEN THEY REMOVED THEIR CLOTHING ..............................................................................................................18

POINT III

THE PROVISION OF A PERMANENT INJUNCTION IS APPROPRIATE TO ACHIEVE THE CESSATION OF ILLEGAL PRACTICES THAT ARE ANTITHETICAL TO HUMAN DIGNITY. SHOULD THE COURT FIND FACTUAL DISPUTES PRECLUDE AN AWARD OF SUMMARY JUDGMENT, THE PLAINTIFF REQUESTS THAT THE COURT ALLOW FOR A PRELIMINAY INJUNCTION TO STOP THE CITY'S DELOUSING AND GROUP STRIP SEARCH REGIMEN ...........20

Conclusion .........................................................................................................................23

# TABLE OF AUTHORITIES

*Alderdice v. Am. Health Holding, Inc.*, 37 F. App'x 185 (6th Cir. 2002) ....................................15

*Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983) ...........................................15

*Chao v. Meggitt*, No. 3:04CV7396, 2006 WL 2252526 (N.D. Ohio Aug. 4, 2006)....................20

*City of Parma, Ohio v. Levi,* 536 F.2d 133 (6th Cir. 1976) .........................................................20

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 274 F.3d

377 (6th Cir. 2001)...................................................................................................................20

*Florence v. Bd. of Chosen Freeholders,* 132 S.Ct. 1510 (2012)............................................14, 18

*Hadix v. Caruso*, 420 F. App'x 480 (6th Cir. 2011)....................................................................14

*Mary Beth G. v. City of Chicago,* 723 F.2d 1263 (7th Cir. 1983) ...................................................2

*Spies v. Voinovich,* 173 F.3d 398 (6th Cir. 1999) .......................................................................19

*S. Ridge Baptist Church v. Indus. Comm'n of Ohio*, 911 F.2d 1203 (6th Cir. 1990) ...................19

*Stoudemire v. Michigan Dep't of Corrections,* 705 F.3d 560 (6th Cir. 2013)...............................18

*Turner v. Safely,* 482 U.S. 78 (1987) ........................................................................................18

*Williams v. City of Cleveland,* 2013 WL 5519403 (N.D. Ohio September 30, 2013)........... passim

*Williams v. City of Cleveland,* 771 F.3d 945 (6th Cir. 2014) .................................................. passim

<u>**INTRODUCTION**</u>

The present case involves booking procedures at the Cleveland Workhouse that are patently offensive, and have been described by the United States Court of Appeals for the Sixth Circuit as akin to how one would treat "an object or an animal"-- rather than a human being. The City of Cleveland admits that until April 14, 2010, it was engaging in the compulsory physical delousing of all detainees admitted to the custody of the Cleveland workhouse as a matter of municipal policy. This so-called "hose treatment" required detainees to be deloused by having their genitals, buttocks and pubic hair sprayed with "liceall" solution from a pressurized spray canister. This "hose treatment" was often applied to detainees in groups who entered a shower area at the Workhouse, and who could see each other being deloused. The Plaintiff in this action, Tynisa Williams, was required to squat while being deloused, with the delousing solution entering her anus as it was sprayed onto her.

Ms. Williams was also subjected to a strip search prior to being deloused in the presence of two other women, less than one hour before her family paid a modest fine on her behalf, and secured her release. This strip search occurred in the Workhouse's clothing room, and employees of the City of Cleveland admitted that detainees are routinely subjected to group strip searches in this room. Those same employees admitted that these group strip searches continue until today, depending on how busy Corrections Officers are at any given time in the Workhouse booking room. This group strip search regimen has been applied to thousands of detainees during the proposed class period. The delousing regimen was similarly applied until April 14, 2010, when the City stopped delousing because of this lawsuit.

During the course of discovery in this action, the City of Cleveland, through its employees, has admitted to a number of reasonable alternatives to these offensive procedures. Relative to

group strip searches in the clothing room, the City's employees admitted that a privacy partition could easily be installed to allow detainees to remove their clothing with some semblance of dignity, and without being viewed by other detainees. Relative to delousing, the City's employees have further admitted, in addition to the reasonable alternative of allowing detainees to apply delousing solution to themselves, that the new policy regimen put in place following the cessation of delousing – having Corrections Officers immediately send detainees who are suspected of having lice to the Workhouse medical unit for assistance – has mitigated the risk of a lice infestation as well, if not better than, a compulsory physical delousing regimen.

The Plaintiff respectfully suggests that, given the balancing test to be applied by the Court and the absence of any material factual dispute, that she is entitled to summary judgment and a permanent injunction on both her delousing and group strip search claims. The procedures addressed in this litigation are abhorrent. Even more so than a visual cavity search, the actions of the City of Cleveland here are "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1272 (7th Cir. 1983). These practices must be permanently stopped, and the Plaintiff requests that the Court rule them unconstitutional.

## STATEMENT OF FACTS

The Plaintiff acknowledges that, when considering a Motion for Summary Judgment, the Court must consider all disputed facts, and inferences from those facts, in favor of the opposing party. The Plaintiff, in making this motion, has relied upon the various factual admissions made during discovery by deponents employed by the City of Cleveland, and maintains that those admissions demonstrate the lack of material factual dispute underlying this motion. These facts are also presented to the Court given the Sixth Circuit's prior review of this case, where the Court

of Appeals held "[g]iven the significant incursion into plaintiffs' privacy rights caused by the jail's preferred method of searching and delousing them, the jail's need to perform these searches in this particular manner must be unusually dire before it can outbalance the affront to plaintiffs' privacy." *Williams v. City of Cleveland,* 771 F.3d 945, 954 (6th Cir. 2014).

### A. *Tynisa Williams' Admission to the Cleveland Workhouse on October 30, 2008*

Tynisa Williams entered the Cleveland Workhouse (the "Workhouse") after a traffic stop on October 28, 2008, as a warrant for her arrest was outstanding by virtue of her failure to pay a fine in Rocky River, Ohio. (Tynisa Williams Dep., Docket Number 109, Page ID 1471). After being taken before a local court, she was remanded to the Cleveland Workhouse and held for a few hours. (Id., Page ID 1471). The Cleveland Workhouse is a local jail that is maintained by Defendant City of Cleveland. With the exception of individuals arrested on felonies awaiting a preliminary hearing, the Workhouse incarcerates only post-arraignment detainees charged with misdemeanor offenses under the Ohio Revised Code. (David Carroll Dep., Docket Number 99, Page ID 922-923). Most individuals charged with felony offenses are housed in the Cuyahoga County Jail immediately following their arraignment. (Id.) Pre-arraignment detainees are held at the Justice Center in downtown Cleveland. (Id., Page ID No. 921).

Shortly after entering the Workhouse, Ms. Williams was required to submit to a strip search in the presence of two other female detainees. (Tynisa Williams Dep., Docket Number 109, Page ID 1486, 1492). Specifically, Ms. Williams was required to move into the Workhouse's clothing room, and remove all of her clothing, including her underpants and brassiere. (Id., Page ID 1489-90). Ms. Williams was required to remove her clothing while under the visual observation of a Corrections Officer, for the specific purpose of detecting contraband. (Id.) (Mary Bounds Dep., Docket Number 98, Page ID 850). Two other detainees were also required to remove their

clothing, and all three detainees could see each other by virtue of being in a room with no privacy partitions of any kind. (Tynisa Williams Dep., Docket Number 109, Page ID 1492-1493). Photographs of the Workhouse Clothing Room are provided below:

  

(Photographs of Clothing Room, Docket Numbers 111-26, 111-28, 111-29, Page ID 1654, 1656, 1657). After being forced to disrobe, and while remaining naked, Ms. Williams and her two fellow detainees were required to step into an adjoining shower room and briefly shower. (Tynisa Williams Dep., Docket Number 109, Page ID 1493-94). Following this brief shower, Ms. Williams was "deloused" in the presence of the other two detainees[1]. (Id., Page ID 1494). Ms. Williams and the other detainees were required to spread their arms and legs apart, and squat, and the delousing solution was sprayed on their entire body, including onto their genitals and anus. (Id., Page ID 1496). Photographs of the shower room are provided below:

---

[1] The Defendants claim that individuals were generally not deloused in the immediate presence of other detainees, but admit that based upon the layout of the shower facility, that detainees could see each other being deloused. (Joseph Stottner Dep., Docket Number 107, Page ID 1269-72).

  

(Photographs of Shower Area, Docket Numbers 111-35, 111-38, 111-41, Page ID 1663, 1666, 1669). The delousing agent in question was applied from a pressurized spray canister filled with "Liceall" solution, which resembles the Ace Hardware Lawn and Garden Spray Canister depicted below:



(Photograph of Example of Spray Bottle, Docket Number 111-22, Page ID 1650); (Rufus Williams Dep., Docket Number 108, Page ID 1395-1396) ("Q: Now, the photograph I showed you, Exhibit 17, it does have this long kind of wand thing, this silver wand. Is that similar to the hose that was used at the workhouse? A. Yes, similar to it.") This pressurized spray made direct contact with Ms. Williams' genitals and anus, and, in fact, penetrated her anus. (Tynisa Williams Dep., Docket Number 109, Page ID 1499). Ms. Williams was then instructed to leave the shower room, and

dress into the Workhouse Jail uniform without having an opportunity to wash off the delousing agent. (Tynisa Williams Dep., Docket Number 109, Page ID 1507). She then moved to a housing unit, and was released half an hour later, as her mother had already paid her outstanding fine before she was transported from the City of Cleveland Justice Center to the Workhouse. (*Id*. at Williams Dep., Page ID 1507-1510).

B. *The City of Cleveland's Acknowledged Delousing Procedures, Alleged Justification and Reasonable Alternatives*

In all material respects, the City of Cleveland acknowledges the truth of Ms. Williams' allegations of delousing. Prior to April 14, 2010, the City of Cleveland acknowledges utilizing the "hose treatment" to delouse all detainees admitted into the custody of the Cleveland Workhouse. (Stella Clark Dep., Docket Number 101, Page ID 1006-07). Specifically, the City admitted, through both its Rule 30(b)(6) witness, Commissioner Jacqueline Lewis, and through its various other witnesses, that the City of Cleveland engaged in the compulsory physical delousing of detainees admitted to the custody of the Cleveland Workhouse regardless of any suspicion that these detainees were actually harboring lice. (Jacqueline Lewis Dep., Docket Number 105, Page ID 1215-1216); (Joseph Stottner Dep., Docket Number 107, Page ID 1299-1300). This delousing regimen included spraying detainees on the genitals and on the buttocks. (Rufus Williams Dep., Docket Number 108, Page ID 1393-94). This delousing regimen was also reflected in the City's written policies. (Workhouse Post Order, Docket Number 111-8, Page ID 1619) (Corrections Officer "assures that inmates shower and are sprayed with appropriate antiseptic or are referred to the medical staff for delousing prior to putting on institutional clothing."); (Workhouse Hygiene and Clothing Policy, Docket Number 111-12, Page ID 1635) ("Showering and delousing is required prior to being issued institutional clothing.") Detainees who are admitted to the

Workhouse are deloused utilizing a pressurized spray canister that sprays a stream of "Liceall" solution onto their pubic and head hair. (Stella Clark Dep., Docket Number 101, Page ID 1006-07). The use of this spray canister has been referred to as the "hose method" in documents produced by the City. (Jacqueline Lewis Dep., Docket Number 105, Page ID 1204); (Email between Kathy Raleigh and Joseph Stottner, June 15, 2010, Docket Number 111-14, Page ID 1639). Corrections Officers hold the wand near the person's genitals when applying the spray. (Rufus Williams Dep., Docket Number 108, Page ID 1410). This delousing occurs in the shower that is adjoined to the Clothing Room where detainees are strip searched. (Joseph Stottner Dep., Docket Number 107, Page ID 1326-1327). This shower area has three shower stalls, and the delousing occurred in front of those shower stalls in the middle of the room near a drain. (Joseph Stottner Dep., Docket Number 107, Page ID 1269-72). This delousing was also conducted in groups, and city officials admitted that detainees could see each other when being deloused. (Joseph Stottner Dep., Docket Number 107, Page ID 1269-72)). A diagram of the relevant shower area, prepared by counsel, is provided below:



Cleveland Workhouse -- Shower Room

(Diagram of Shower Area, Docket Number 111-42, Page ID 1670).  The "liceall" delousing solution is not applied pursuant to the manufacturer's directions, in that it was only on detainees for a couple of minutes, there was no follow up application and no nit comb was provided.  (Rufus Williams Dep., Docket Number 108, Page ID 1423-24); (Stella Clark Dep., Docket Number 101, Page ID 1010-12) (Photos of Liceall Bottle, Docket Number 111-20, 111-21, Page ID 1648, 1649) (showing directions).

In the course of discovery, various witnesses from the City of Cleveland were asked to provide a justification for this delousing regimen, and for its origins as policy.  No witness could identify the concrete origins of this policy, with Lieutenant Joseph Stottner, the former Jail Manager at the Workhouse, stating that delousing regimen began when the Cleveland Department of Health was in charge of the Workhouse prior to the early 1990s.[2]  (Joseph Stottner Dep., Docket Number 107, Page ID 1264).  (See also, Stella Clark Dep., Docket Number 101, Page ID 1013-1014).  Those same employees could only provide one justification for physically delousing detainees, as compared to the alternative of allowing them to apply delousing solution to themselves.  Namely, that Corrections Officers could not "trust" inmates to perform the procedure properly.  (Stella Clark Dep., Docket Number 101, Page ID 1067); (Jacqueline Lewis Dep., Docket Number 105, Page ID 1202-03).  This allegation is made despite the fact that inmates are routinely

---

[2] Several witness for the City of Cleveland could provide no testimony regarding the justification for the delousing policy.  (David Carroll Dep., Docket Number 99, Page ID 926); (Stella Clark Dep., Docket Number 101, Page ID 1088); (Martin Flask Dep., Docket Number 102, Page ID 1105); (Reginald Flowers Dep., Docket Number 103, Page ID 1133); (Michael McGrath Dep., Docket Number 106, Page ID 1238).

required to attend to their own hygiene needs, such as showering, (Rufus Williams Dep., Docket Number 108, Page ID 1416-18), and that at the Cleveland Justice Center, detainees who were found to have lice were entrusted to apply their own delousing solution after being diagnosed by a medical provider—at the same time that detainees were being subjected to blanket physical delousing at the Workhouse. (Rufus Williams Dep., Docket Number 108, Page ID 1408); (Joseph Stottner Dep., Docket Number 107, Page ID 1306-07, 1311-12). Corrections Officers further testified that, despite the offensive procedures addressed in this case, that detainees almost always did what they were told when coming through the Clothing Room. (Rufus Williams Dep., Docket Number 108, Page ID 1416-18). One witness testified that he had deloused over a thousand detainees at the "third person" in the booking area, and at no time did an inmate ever fail to follow his directions regarding being strip searched and physically deloused. (Rufus Williams Dep., Docket Number 108, Page ID 1446). The City stopped delousing detainees utilizing the "hose method" on April 14, 2010 in response to this lawsuit. (Jacqueline Lewis Dep., Docket Number 105, Page ID 1201); (Email between Jacqueline Lewis and Joseph Stottner, April 14, 2010, Docket Number 111-15, Page ID 1641); (Inmate Delousing Policy, April 2010, Docket Number 111-13, Page ID 1638-39).

The underpinnings of this physical delousing policy are completely undermined, however, by the testimony of the current Jail Manager, Reginald Flowers, who took over managing the Workhouse shortly after the physical delousing procedure was stopped, and by Stella Clark, a former Jail Manager. Lieutenant Clark largely admitted during her deposition that providing delousing solution to detainees and having them apply it themselves with supervision by a Corrections Officer would accomplish the same goal as physical delousing. (Stella Clark Dep., Docket Number 101, Page ID 1073-74). Lieutenant Flowers, when confronted with a description

of the prior delousing policies and practices at the Workhouse, further testified that the physical delousing procedure "sounds crazy." (Reginald Flowers Dep., Docket Number 103, Page ID 1129). In that regard, the Workhouse now no longer physically delouses detainees. Instead, Corrections Officers screen detainees for lice, and refer them to medical personnel for further assistance should they be found to be infested. (Id., Page ID 1148-49). Detainees are allowed to then apply delousing solution to themselves after receiving instruction from a nurse. (Id., Page ID 1159 – 60). Lieutenant Flowers indicated that this current policy is working well, and that the Workhouse has had no significant infestations of head or pubic lice during his tenure (Reginald Flowers Dep., Docket Number 103, Page ID 1167-68)) ("Q: Do you feel that a compulsory delousing policy is necessary in light of the policy that you have in place today? A: No, not at this time. Q: Why do you feel it is not necessary? A: Because we don't have a problem, what's going on now at all. **Everything is going smooth**.") (See Also, Commissioner David Carroll Dep., Docket Number 99, Page ID 929-30) ("I think the way it is being done now is working for us.") Despite this, various corrections officials continue to defend the offensive physical delousing policy. (Stella Clark Dep., Docket Number 101, Page ID 1067); (Jacqueline Lewis Dep., Docket Number 105, Page ID 1202-03); (Joseph Stottner Dep., Docket Number 107, Page ID 1306-1313), A former supervisor of both the Justice Center and the Workhouse, and the City's Rule 30(b)(6) deponent, indicated that she believed the policy to be fine, and would consider reinstituting it at the end of this litigation. (Jacqueline Lewis Dep., Docket Number 105, Page ID 1215).

C. *The City of Cleveland's Acknowledged Group Strip Search Procedures, the Alleged Justification, and Reasonable Alternatives*

The City of Cleveland has also acknowledged that it does, on routine occasion to this day, conduct blanket group strip searches of pre-arraignment misdemeanor detainees. These searches

occur in the Clothing Room. (Reginald Flowers Dep., Docket Number 103, Page ID 1139-40). Detainees are brought back from holding cells in groups of as many as three detainees at a time, (Stella Clark Dep., Docket Number 101, Page ID 1030), and required to remove all of their clothing, including their underclothes and, for women, their brassiere. (Reginald Flowers Dep., Docket Number 103, Page ID 1139-1142). They are forced to remove all of their clothing while being observed by a Corrections Officer to be searched for contraband, including, on occasion, their sanitary napkins. (Stella Clark Dep., Docket Number 101, Page ID 1038, 1042-43). The clothing room has no privacy partitions, and detainees can see each other as they are required to undress. (David Carroll Dep., Docket Number 99, Page ID 948-50). Prior to April 2010, detainees such as Tynisa Williams would be required to stand naked for a period of time before being showered and deloused in the adjoining shower area. (Joseph Stottner Dep., Docket Number 107, Page ID 1325-26). The justification put forward for requiring detainees to disrobe in each other's presence was that the jail was "busy," and Corrections Officers needed to strip search multiple detainees for expediency. (Rufus Williams Dep., Docket Number 108, Page ID 1381, 1384). In essence, the City of Cleveland claims that its administrative convenience overrides the privacy rights of detainees. These searches are currently taking place in groups regardless of the pendency of this action. (Reginald Flowers Dep., Docket Number 103, Page ID 1176); (Stella Clark Dep., Docket Number 101, Page ID 1043-44).

This justification for these group searches is a rouse, however. Former Jail Manager Clerk admitted that, while it may "slow things down just a little bit," detainees could easily be strip searched individually versus as part of a group. (Stella Clark Dep., Docket Number 101, Page ID 1066-67). Furthermore, the Clothing Room is 14 feet by 11 feet, with there being over 8 feet between shelfing and the opposite wall, as shown in the following diagram:



CLOTHING AREA -- CLEVELAND WORKHOUSE

(Diagram of Clothing Room Prepared by Counsel, Docket Number 111-33, Page ID 1661).  There is plenty of space in this eight-foot distance to put in a privacy partition or curtain.  Former Jail Administrator Joseph Stottner admitted as much when being shown the following photograph, which has counsel's attempt to show where a privacy curtain could be installed by electronically drawing on the photograph with an iPad:



(Photograph of Clothing Room Modified During Stottner Deposition, Docket Number 111-32, Page ID 1660); (Joseph Stottner Dep., Docket Number 107, Page ID 1333-37). Lieutenant Stottner also admitted that a Corrections Officer could just as easily observe two detainees with the provision of a privacy partition as they could today with no partition in the clothing room.[3] (Id., Page ID 1338). The State of Ohio has, in fact, recommended that local jails provide privacy partitions in its Corrections Officer Basic Training Curriculum, a copy of which was produced by the City of Cleveland in discovery. Specifically, these training materials read as follows:

---

[3] Lieutenant Stottner is an attorney. He graduated from the Cleveland Marshall College of Law in 2002, and was admitted to the Ohio bar in 2003. (Joseph Stottner Dep., Docket Number 107, Page ID 1253).

c. Search area should provide privacy from outside observation

    1. Modesty panels are inexpensive and effective

    2. Use of these panels demonstrate good faith of a department to conduct searches in a constitutional manner

(Ohio Corrections Training Materials, Docket Number 111-18, Page ID 1646). The Plaintiff certainly agrees: the provision of privacy partitions is "inexpensive and effective," and would "demonstrate good faith of a department to conduct searches in a constitutional manner." The installation of such partitions can also be easily accomplished at the Workhouse with no significant changes to the physical plant in the Clothing Room. These partitions would preclude detainees from having to undergo the indignity of being strip searched in front of other detainees.

D. *Procedural History*

This action was filed in December 2009, and has been the subject of several prior motions before the Court. Following a stay of this action while the United States Supreme Court was considering arguments in *Florence v. Bd. of Chosen Freeholders,* 132 S.Ct. 1510 (2012), the Court granted Defendant City of Cleveland's Motion for Judgment on the Pleadings, finding that the group searches and delousing procedures at issue in this litigation were appropriate under the *Florence* decision. *See, Williams v. City of Cleveland,* 2013 WL 5519403 (N.D. Ohio September 30, 2013). (Decision and Order, Docket Number 111-6, Page ID 1590). The Plaintiff respectfully appealed this dismissal to the United States Court of Appeals for the Sixth Circuit, who later reversed this Court's decision in *Williams v. City of Cleveland,* 771 F.3d 945 (6th Cir. 2014). (Decision, U. S. Court of Appeals, Docket Number 111-7, Page ID 1603). The Plaintiff later filed a Second Amended Complaint upon remand, and the parties proceeded to take discovery. Pursuant

14

to leave of Court, the parties concluded substantial discovery in September 2015, with cross-motions for summary judgment following pursuant to the Court's scheduling order.

## STANDARD OF REVIEW

On a motion for summary judgment, the evidence must be viewed in a light most favorable to the party opposing the motion. *Alderdice v. Am. Health Holding, Inc.*, 37 Fed. App'x 185, 186 (6th Cir. 2002). However, "[i]f the record evidence is not disputed as to any material fact, the case should be decided as a matter of law rather than submitted to a jury. *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir. 1983). The central issue in resolving motions for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Alderdice*, 37 Fed. App'x at 186. A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *S. Ridge Baptist Church v. Indus. Comm'n of Ohio*, 911 F.2d 1203, 1205 (6th Cir. 1990).

## ARGUMENT

In many respects, the legal issues before the Court have already been decided in the Sixth Circuit's decision regarding the Plaintiff's prior appeal. Specifically, the Court of Appeals considered many of the arguments addressed in this motion, and found that the Plaintiff's allegations plausibly asserted violations of the Fourth Amendment to the United States Constitution. The Court of Appeals held that Fourth Amendment guarantees detainees a "reasonable expectation of privacy." While that right is "significantly reduced" during

incarceration, "the treatment of a detainee must still be reasonable under the circumstances in order to comport with the Fourth Amendment." *Williams v. City of Cleveland,* 771 F.3d 945, 950 (6th Cir. 2014). "Where a particular search or seizure involves significant intrusion into a detainee's privacy interests, the existence of 'obvious alternatives … that fully accommodate[] the prisoner's rights at *de minimus* cost to valid penological interests' suggests that the institution's needs to proceed in its chosen manner does not outweigh the burdens it imposes upon the detainee." *Id.* The Court of Appeals further concluded that a strip search is "a particularly extreme invasion," and cannot "be conducted in any manner whatsoever that the facility chooses." *Id.,* at 951. Searches that are "conducted in a particularly invasive manner … may be unreasonable by virtue of the way in which it is conducted." *Id.,* at 952.

The facts presented to the Court of Appeals are, except for one issue involving Intervening Plaintiff Shawn Bealer, identical to the material facts presented to this Court. At the time the Plaintiff appealed, she availed herself of the transcript of the Rule 30(b)(6) deposition for the City of Cleveland, provided by Commissioner Jacqueline Lewis. Ms. Lewis confirmed the various practices detailed in this brief. The City of Cleveland's practices were, and are, offensive and absurd. In light of the number of alternatives to group strip searches and physical delousing detailed above, those practices are also patently unconstitutional.

## POINT I

**THE CITY OF CLEVELAND'S DELOUSING REGIMEN IS PATENTLY ILLEGAL. THE CITY HAS FAILED TO PROVIDE ANY JUSTIFICATION FOR ENGAGING IN COMPULSORY PHYSICAL DELOUSING OTHER THAN VAGUE ALLEGATIONS THAT INMATES WOULD NOT COOPERATE WITH A LESS ONEROUS DELOUSING REGIMEN.**

The Court of Appeals in *Williams* extensive discussed the wisdom and legality of the "hose treatment" at issue in this litigation. The Sixth Circuit found that having delousing solution

sprayed on one's genitals represented a substantial "injury to personal dignity and individual privacy." *Williams,* 771 F.3d at 952. The Court further held that, "[g]iven the significant incursion into plaintiffs' privacy rights caused by the jail's preferred method of searching and delousing them, the jail's need to perform the searches in this particular manner must be unusually dire before it can outbalance the affront to plaintiffs' privacy." *Id.,* at 954. "In the absence of some evidence suggesting frequent noncompliance or an unreasonable drain on jail resources, it is not obvious that it would be impracticably onerous for the jail to permit self-application of the delousing solution while reserving the 'hose treatment' for instances where individual detainees misapply or refuse to properly apply the provided solution." *Id.*

There is no such evidence here. The Plaintiff deposed all of the individuals listed in the Defendant's initial disclosures, and several other individuals who were involved in carrying out this delousing regimen. (Defendant's Initial Disclosures, Docket Number 111-3, Page ID 1581); Defendant's Supplemental Initial Disclosures, Docket Number 111-4, Page ID 1585). None of these individuals could give any explanation for the need for compulsory physical delousing beyond their refusal to trust detainees to apply the solution to themselves. Contrary to "suggesting frequent noncompliance," testimony from various Cleveland Corrections officials demonstrated that detainees were almost always compliant with their instructions under the old delousing regimen. Furthermore, the Plaintiff reviewed all documents provided by the City of Cleveland in their initial disclosures; none provided any justification for these practices other than the need to keep lice out of the Workhouse. Far from being able to show an "usually dire" justification for these searches, the City of Cleveland cannot show any evidence to support them at all, hence why the Workhouse's current Jail Manager called the compulsory delousing practices "crazy." Lieutenant Flower's description is particularly apropos when considering the reasonable

alternative he has instituted, namely vigilance and early medical intervention, as compared to hosing down a detainee "as if she was an object or an animal." *Id.,* at 955.

Undoubtedly, the City of Cleveland will respond and claim they are entitled to substantial deference as corrections administrators under *Turner v. Safely,* 482 U.S. 78 (1987), and this deference should excuse their conduct. The Sixth Circuit has already addressed this argument, and rejected it, as "we must not confuse deference with abdication." *Stoudemire v. Michigan Dep't of Corrections,* 705 F.3d 560, 572 (6th Cir. 2013). They will also undoubtedly attempt to rely on the holding of the United States Supreme Court in *Florence,* despite the fact that the searches at issue here are far "more invasive" than those considered by the Supreme Court. *Williams,* 771 F.3d at 952. The Supreme Court also expressly limited its ruling to the facts before it, and exempted from that ruling "searches that involve the touching of detainees" and those involving "intentional humiliation and other abusive practices." *Florence,* 132 S.Ct. at 1522-23. Given the dearth of information provided by the City in discovery to support this bizarre procedure, and the obvious and easy alternatives to compulsory delousing, the City has not shown any "unusually dire" circumstances that would allow them to spray "Liceall" solution on the genitals and buttocks of misdemeanor detainees at the Cleveland Workhouse. An award of summary judgment for the Plaintiff is appropriate.

## POINT II

**THE CITY OF CLEVELAND'S GROUP STRIP SEARCH REGIMEN IS PATENTLY ILLEGAL. THE CITY HAS ADMITTED THAT A PRIVACY CURTAIN OR PARTITION CAN EASILY BE INSTALLED IN THE CLOTHING ROOM THAT WOULD PROVIDE DETAINEES WITH PRIVACY WHEN THEY REMOVED THEIR CLOTHING.**

The Sixth Circuit has similarly opined on the legality of group strip searches when considering this matter on appeal, and found them to be in violation of the Fourth Amendment as

well. Specifically, the Circuit Court held that "a strip search is more invasive when it is performed where other people can see the person being stripped … [t]he wider an audience for a strip search, the more humiliating it becomes, especially when the stripped individual is exposed to bystanders who do not share the searching officers' institutional need to view her unclothed." *Williams,* at 953. Similar to the Circuit Court's holding on delousing, the City of Cleveland must demonstrate to this Court that "the jail's selection of the particular procedures to which it subjected plaintiffs is reasonably related to that legitimate end." *Id.,* at 954.

Here, the Plaintiff has provided compelling, and indisputable, evidence that there is no need for the City of Cleveland to strip search detainees in groups without privacy partitions. There is plenty of space in the Clothing Room to hang a curtain, build a wall, or otherwise construct a partition to allow at least two detainees to be strip searched together without forcing them to remove their clothes in front of each other. The Workhouse's former Jail Manager admitted as much in his deposition after being shown photos of the Clothing Room. In short, there is a *de minimus* way for the City of Cleveland to search detainees while respecting their privacy. When "there are ready alternatives available to the regulations in question that fully accommodate the prisoner's rights at *de minimus* cost to valid penological interests," that is compelling evidence of the regulation's impropriety. *Spies v. Voinovich,* 173 F.3d 398, 403 (6th Cir. 1999).

Despite the Sixth Circuit's ruling, the pendency of this action, and a reasonable alternative that respects a detainee's privacy, the City of Cleveland continues to strip search detainees in groups. The Plaintiff respectfully suggests that she is entitled to summary judgment given the City's admissions on this point.

## POINT III

**THE PROVISION OF A PERMANENT INJUNCTION IS APPROPRIATE TO
ACHIEVE THE CESSATION OF ILLEGAL PRACTICES THAT ARE
ANTITHETICAL TO HUMAN DIGNITY.  SHOULD THE COURT FIND FACTUAL
DISPUTES PRECLUDE AN AWARD OF SUMMARY JUDGMENT, THE PLAINTIFF
REQUESTS THAT THE COURT ALLOW FOR A PRELIMINAY INJUNCTION TO
STOP THE CITY'S DELOUSING AND GROUP STRIP SEARCH REGIMEN.**

Should the Court agree that the Plaintiff is entitled to summary judgment on either the
group strip search or physical delousing claims, the Plaintiff requests that the court order a
permanent injunction banning these practices at the Workhouse going forward.  "In order to show
she is entitled to a permanent injunction, Plaintiff must: demonstrate (1) success on the merits of
[Plaintiff's] claim; (2) that [Plaintiff] will suffer irreparable harm in the absence of an injunction
and has no adequate remedy at law; (3) the threatened injury to the [P]laintiff outweighs any injury
the [D]efendant will suffer if the Court grants an injunction; and (4) an injunction will not harm
the public interest." *Chao v. Meggitt*, No. 3:04CV7396, 2006 WL 2252526, at *2 (N.D. Ohio Aug.
4, 2006). "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal
court of its power to determine the legality of the practice." *Deja Vu of Nashville, Inc. v. Metro.
Gov't of Nashville & Davidson Cnty., Tennessee*, 274 F.3d 377, 387 (6th Cir. 2001). This is
especially so where the Defendant has expressed the possibility of reenacting the challenged
policy. *Id*. "The Sixth Circuit focuses the inquiry on the second prong of the above test,
emphasizing '[a] party seeking an injunction must show that irreparable injury will result if the
injunction is not granted, for which no adequate legal remedy is available.'" *City of Parma, Ohio
v. Levi,* 536 F.2d 133, 136 (6th Cir. 1976); *Chao*, 2006 WL 2252526, at *2 (N.D. Ohio Aug. 4,
2006). Additionally, where prison conditions are involved, the PLRA requires that the relief

requested must be narrowly drawn, and be the least intrusive means to correct the violation. *Hadix v. Caruso*, 420 Fed. App'x 480, 481-82 (6th Cir. 2011) (unpublished).

In light of the Circuit Court's decision when considering the prior appeal in this case, and the additional depositions taken by the Plaintiff wherein the Defendant repeatedly failed to provide any justification for its group strip search and compulsory delousing procedures, the Plaintiff respectfully suggests that she can demonstrate success on the merits of her claim. Second, there is no question that the Plaintiff, and the proposed class members, will suffer irreparable harm from the group strip searches, as the Defendants admit that they continue to implement these procedures. While the Defendants voluntarily stopped delousing all individuals who entered the custody of the Cleveland Workhouse, the Defendants' 30(b)(6) deponent testified that this cessation was temporary, and that it was possible that they were going to reenact the policy. These procedures were described by the 6th Circuit as abhorrent and akin to how one would treat "an object or an animal." Therefore, Plaintiff respectfully suggests that she has demonstrated irreparable harm in the absence of intervention by this Court.

Third, the Plaintiff also maintains that she can easily demonstrate that the injury she and other class members are threatened with far outweighs any injury the Defendants may suffer. The Defendants cannot credibly argue that they will suffer a substantial injury from a permanent injunction in light of the testimony provided by the current Jail Manager, Reginald Flowers, who took over managing the Workhouse shortly after the physical delousing procedure was stopped. Lieutenant Flowers, when confronted with a description of the prior delousing policies and practices at the Workhouse, stated that the physical delousing procedure "sounds crazy." Lieutenant Flowers further indicated that this current policy is working well, and that the Workhouse has had no significant infestations of head or pubic lice during his tenure. Therefore,

the Defendants cannot demonstrate that their injury from not engaging in compulsory delousing will outweigh the threatened injury to the Plaintiff and potential class members. For similar reasons, the Defendants cannot establish that the public's interests will be harmed given that the current delousing policy, which does not involve the blanket violation of thousands of privacy rights, is working well. The same can be said relative to group searches, as these can be avoided by the installation of a privacy partition in the Workhouse Clothing Room.

With regards to the PLRA, the Plaintiff also maintains that her request for permanent injunction is narrowly drawn, and is also the least intrusive means to correct the City's violation of the Fourth Amendment. Relative to delousing, the Plaintiff is only asking the Court to require the City to follow its current policies, and not revert back to older, offensive practices. With regards to group strip searches, the Defendants admit that a privacy partition could be placed in the clothing room with little trouble. The price of a curtain is nominal, when compared to the violation of the civil rights of thousands of prospective individuals.

The Plaintiff respectfully requests that the Court grant her request for a permanent injunction. In the alternative, should the Court believe that there are disputed issues of fact precluding Plaintiff's entitlement to summary judgment, she requests that the Court grant her a preliminary injunction so that the Defendant's abhorrent policies can be held in abeyance until this matter is tried before the Court.

## CONCLUSION

For these reasons, the Plaintiff requests that the Court grant her Motion for Summary Judgment and Permanent Injunction in all respects. In the alternative, the Plaintiff requests a Preliminary Injunction should the Court find that factual disputes preclude an award of summary judgment to the Plaintiff.

Respectfully Submitted By:

/s Elmer Robert Keach, III

Dated: November 9, 2015

_____

Elmer Robert Keach, III, Esquire
Member of the Bar, USDC, ND Ohio
LAW OFFICES OF ELMER ROBERT
  KEACH, III, PC
One Pine West Plaza
Suite 109
Albany, NY 12205
Telephone:     518.434.1718
Telecopier:     518.770.1558
Electronic Mail:
bobkeach@keachlawfirm.com

Nicholas Migliaccio, Esquire
MIGLIACCIO LAW FIRM, PLLC
438 16th Street SE
Washington, DC 20003
Telephone:     202.470.3520
Telecopier:     202.800.2730
Electronic Mail:
nmigliccio@classlawdc.com

D. Aaron Rihn, Esquire
ROBERT PEIRCE & ASSOCIATES, PC
2500 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219
Telephone:     412.281.7229
Telecopier:     412.281.4229
Electronic Mail:
arihn@peircelaw.com

Daniel Karon, Esquire
KARON LLP
700 West St. Clair Avenue
Suite 200
Cleveland, OH  44113
Telephone:    216.622.1851
Telecopier:    216.241.8175
Electronic Mail:
dkaron@karonllc.com

**ATTORNEYS FOR PLAINTIFF
TYNISHA WILLIAMS**