UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| TYNISHA WILLIAMS and SHAWN BEALER, both individually and on behalf of a class of others similarly situated, | : | |
| Plaintiffs, | : | |
| v. | : | No. 1:09-CV-2991 |
| THE CITY OF CLEVELAND, | : | The Honorable Benita Y. Pearson |
| Defendant. | : | |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The City of Cleveland admits in its motion response that its Corrections Officers utilized the "hose treatment" to delouse detainees admitted to the Cleveland Workhouse, and has admitted as much since the outset of this litigation in 2009. The City of Cleveland further admits to conducting blanket strip searches on groups of detainees, and that this offensive practice continues until today. When hearing the appeal in this matter, the United States Court of Appeals for the Sixth Circuit considered these exact issues when ruling that the Plaintiff's claims herein represent a violation of the Fourth Amendment to the United States Constitution. When remanding this case to the Northern District of Ohio, the Sixth Circuit required the City of Cleveland to demonstrate that "the jail's need to perform searches in this particular manner [is] unusually dire before it can outbalance the affront to plaintiffs' privacy." *Williams v. City of Cleveland,* 771 F.3d 945, 954 (6th Cir. 2014). The response from the City of Cleveland here is to make no such showing, and to effectively ignore the binding appellate precedent already handed down in this action. Instead, the City claims that the easy alternatives identified in Plaintiff Tynisa Williams' motion papers, namely the installation of privacy partitions, strip searching detainees one at a time, allowing detainees to apply delousing solution to themselves, and increased vigilance for the presence of lice, are simply too difficult for them to manage and contrary to their interests as jailers. Not only are the City's arguments contradicted by the factual record in this case, including the testimony of several current corrections officials who are either employed at, or supervise, the Workhouse, they also make little sense. The City of Cleveland can easily treat the misdemeanor detainees it houses at the Workhouse with a modicum of dignity--it simply chooses not do so, and asks this Court to condone it.

Furthermore, when reviewing the City of Cleveland's response to the Plaintiff's Motion for Summary Judgment, it is clear that the City both fails to understand the decision of the Sixth Circuit in this case, and, more importantly, expects this Court to ignore it. The Sixth Circuit's decision is described as being "informative," and as representing a "bizarre misunderstanding" of the law. (Defendant's Brief, Docket Number 118, Page ID 1953, 1959). The City further claims that "there is no Sixth Circuit decision that has considered the issue of group strip searches or delousing in a manner similar to the circumstances described by the Plaintiff." (Id., Page ID 1946). The Defendant's effort to equate make believe with reality notwithstanding, the decision of the United States Court of Appeals is binding precedent on this Court, and one that considers the very factual issues at stake in this motion--it is not just "informative." *See, Johnson v. City of Detroit,* 319 F. Supp.2d 756, 771 (E.D. Mich. 2004) ("The district courts in this circuit are, of course, bound by pertinent decisions of [the Sixth Circuit] even if they find what they consider more persuasive authority in other circuits"). The Sixth Circuit's decision requires this Court to grant Plaintiff Tynisa Williams summary judgment. It also requires the Court to provide a permanent injunction stopping the City of Cleveland from engaging in practices that are fairly described as being humiliating and antithetical to human dignity.

**LEGAL ARGUMENT**

*A. The City's Arguments on Clearly Established Law and Class Certification*

One of the City's principal arguments is that there is no clearly established law on the questions addressed in the Plaintiff's motion. Setting aside the fact that the Sixth Circuit most certainly established the law here, the absence of clearly established law has no effect on the question of municipal liability if a government agency's written policies are themselves

unconstitutional. "When plaintiffs seek to recover from a municipality, there is no requirement that a particular right be "clearly established," but the plaintiffs must show that the municipality itself was the proximate cause of any deprivation." *Rush v. City of Mansfield,* 771 F. Supp.2d 827, 836 (N.D. Ohio 2011). Municipal liability can be demonstrated by "express municipal policy" or "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law." *Id.,* at 836-37 (*quoting, Monell v, Dep't of Social Services,* 436 U.S. 658, 691 (1978) and *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988)). Here, the City acknowledges that its policies and procedures are as alleged by Plaintiff Tynisa Williams in her Second Amended Complaint. The City of Cleveland is legally responsible for these policies under Federal law.

Next, the City complains that the Plaintiff's complaint does not discuss group strip searches in its proposed class definition. This has no relevance to this proceeding, as Tynisa Williams clearly alleged in her Amended Complaint that she was strip searched with other female detainees, (Second Amended Complaint, Docket Number 111-1, Page ID 1561), and the City admits as much in their motion papers. (Defendant's Brief, Docket Number 118, Page ID 1938, 1939) (1938 - "The City continues to strip search incoming prisoners in groups," 1939 – "While Defendant does not dispute that this method of delousing was nicknamed the "hose treatment," Defendant does dispute Plaintiff's characterization of how it occurred in her complaint, but generally agrees with her deposition testimony with the exception of the above questions of fact"). It is self-evident that the Plaintiff will seek to address group strip searches when she moves this Court for class certification. "District courts are permitted to limit or modify class definitions to provide the necessary precision." *In Re Monumental Life Ins. Co.,* 365 F.3d 408, 414 (5th Cir. 2004). "A court is not bound by the class definition proposed in the complaint." *Robidoux v. Celani,* 987 F.2d 931,

937 (2d Cir. 1993). Consequently, the Plaintiff will, at the appropriate time, propose a class of individuals who were strip searched in groups, as learned during discovery. The Plaintiff's proposed class certification motion does not affect the Court's consideration of Plaintiff's Tynisa Williams' claims that she was strip searched with other detainees, as admitted by the City of Cleveland.

B. *The City's Arguments on the Merits of Group Strip Searches and Delousing*

When addressing the merits of the Plaintiff's Motion for Summary Judgment, the City of Cleveland, much like its treatment of the Sixth Circuit's decision on appeal, simply ignores the extensive factual record provided by the Plaintiff regarding the various alternatives to delousing and group strip searches. This effort includes ignoring the testimony of their own Corrections Officials, and their designated deponents under Fed. R. Civ. Proc. 30(b)(6). This is especially so regarding the City's claims that "the inmates were told to face separate walls while they undressed to limit the possibility of seeing one another disrobe." (Defendant's Memorandum, Docket Number 118, Page ID 1939. This testimony is directly contradicted by one of the City's designated deponents, Mary Bounds, who admitted that Corrections Officers observe the breasts and genitals of detainees during the strip searches – one must be facing a Corrections Officer for them to observe your genitals or breasts. (Mary Bounds Dep., Docket Number 98, Page ID 852). This testimony binds the City of Cleveland, and represents a judicial admission. *See, Rainey v. American Forest and Paper Ass'n,* 26 F. Supp.2d 82, 94 (D.D.C. 1998). While the City's motion papers repeatedly parse the factual record based on self-serving deposition testimony, there is no dispute regarding the salient facts underlying the heart of the Plaintiff's claim: Tynisa Williams

4

was strip searched with other women,[1] and had delousing spray applied to her genitals and buttocks. These procedures were considered by the Sixth Circuit, and found to be illegal absent a compelling justification that is not found here.

1. <u>The City's Admitted Policy of Conducting Group Strip Searches is Unconstitutional</u>

The City admits conducting strip searches in groups, and admits that that practice continues until today, despite the pendency of this litigation and the Sixth Circuit's strongly worded decision. The Plaintiff has proposed two easy alternatives to these practices – doing searches one at a time, or installing privacy partitions in the search room. The City does not explain how strip searching one individual at a time is untenable other than a claim of administrative convenience; something that is of no moment before this Court given the compelling claims of the violation of constitutional rights raised by the Plaintiff. *See, Hill v. Bogans,* 735 F.2d 391, 394-95 (10th Cir. 1984) ("A jail's desire to maintain security, to avoid charges of discriminatory treatment, and to promote administrative convenience simply does not justify routine strip searches in a public area of persons detained for minor traffic offenses"). The City also does not explain how the installation of privacy partitions could not be accomplished should there be a legitimate need for strip searching multiple detainees, especially given that the State of Ohio strongly recommends the use of such partitions. (Ohio Corrections Training Manual, Docket Number 111-18, Page ID 1646). The City further claims that if a Corrections Officer is momentarily distracted by one detainee, this could implicate security interests. It is axiomatic, however, that a Corrections Officer faced with this situation could simply summon another officer for help.

---

[1] The City complains that it does not require detainees to "squat" as part of their strip search regimen. This allegation does nothing to minimize that Tynisa Williams was subjected to a strip search, as she had to remove her clothes to allow for a visual examination of her naked body.

5

No reasonable jury would believe these arguments, and they most certainly do not provide an "unusually dire" justification for the City's unconstitutional policies and practices. The Plaintiff respectfully suggests that the Court award summary judgment and a permanent injunction to her on the group strip search issues accordingly.

2. The City's Admitted Policy of Physical Delousing is Unconstitutional

The City further continues to defend their "hose method" strip search policy, initially comparing the procedure to the use of "bug spray" or "perfume." Such an argument is offensive and absurd. There is an important difference between spraying something on yourself that would not ordinarily contact your genitals, and have a complete stranger spray your genitals, likely in front of other detainees. The Sixth Circuit already compared this conduct to the manner in which "an object or animal" would be treated, and justifiably so. Additionally, the City's testimony about an alleged lack of compliance by detainees as a justification for the delousing regimen is contradicted by the testimony of their own corrections officials, who admitted that their instructions were nearly always followed in the clothing room, even when they were using the "hose method." (Rufus Williams Dep., Docket Number 108, Page ID 1416-1418, 1446). In short, there is no justification for refusing to allow detainees to apply delousing solution to themselves as an alternative to the "hose method." The City does not even provide a plausible argument in response to this contention.

More importantly, the City of Cleveland completely ignores its current delousing regimen, were detainees are monitored for lice and provided medical treatment, as a viable alternative to the "hose method." The City does not address the Plaintiff's extensive argument on this point; it does not address how the current supervisor of the Workhouse detailed in his testimony that the "hose

method" … "sounds crazy." (Reginald Flowers Dep., Docket Number 103, Page ID 1129). The reason this is not addressed in the City's motion papers is simple: they have found a reasonable alternative to the "hose method" that is working well and protects the constitutional rights of the detainees admitted to the Workhouse.

The existence of this *de minimus* alternative also provides a compelling justification for the imposition of summary judgment against the City for their delousing regimen. It further shows that any claim by the City of an "unusually dire" justification for their physical delousing regimen is specious. The Plaintiff respectfully requests that the Court enter summary judgment on liability in her favor accordingly.


*C. The Plaintiff Does Not Make a Claim for Involuntary Medical Treatment.*

The Plaintiff acknowledges that her claims for involuntary medical treatment were not addressed in her appeal to the Sixth Circuit. Those claims, as detailed in part of her Second Cause of Action, are hereby withdrawn.

## CONCLUSION

The Plaintiff respectfully requests that the Court grant her summary judgment on liability for both her group strip search and delousing claims, and that it correspondingly deny the City of Cleveland's request for summary judgment. The Plaintiff, more importantly, requests that this Court issue an order enjoining the City of Cleveland from continuing these offensive and humiliating practices, on either a permanent or preliminary basis.

Respectfully Submitted By:

/s Elmer Robert Keach, III

Dated: December 23, 2015

Elmer Robert Keach, III, Esquire
Member of the Bar, USDC, ND Ohio
LAW OFFICES OF ELMER ROBERT
  KEACH, III, PC
One Pine West Plaza
Suite 109
Albany, NY  12205
Telephone:    518.434.1718
Telecopier:    518.770.1558
Electronic Mail:
bobkeach@keachlawfirm.com

Nicholas Migliaccio, Esquire
MIGLIACCIO LAW FIRM, PLLC
438 16th Street SE
Washington, DC  20003
Telephone:    202.470.3520
Telecopier:    202.800.2730
Electronic Mail:
nmigliccio@classlawdc.com

D. Aaron Rihn, Esquire
ROBERT PEIRCE & ASSOCIATES, PC
2500 Gulf Tower
707 Grant Street
Pittsburgh, PA  15219
Telephone:    412.281.7229
Telecopier:    412.281.4229
Electronic Mail:

arihn@peircelaw.com

Daniel Karon, Esquire
KARON LLP
700 West St. Clair Avenue
Suite 200
Cleveland, OH  44113
Telephone:     216.622.1851
Telecopier:     216.241.8175
Electronic Mail:
dkaron@karonllc.com

**ATTORNEYS FOR PLAINTIFF
TYNISHA WILLIAMS**