PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TYNISA WILLIAMS, *etc.*, | ) | |
| | ) | CASE NO.  1:09CV2991 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| THE CITY OF CLEVELAND, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF Nos. 110 and 118] |

Plaintiff Tynisa Williams ("Plaintiff") brought this putative class action under 42 U.S.C. § 1983 against Defendant City of Cleveland (the "City" or "Defendant") alleging compulsory physical delousing and group strip search claims.  These claims are now before the Court upon cross-motions for summary judgment (ECF Nos. 110 and 118).  Plaintiff moves the Court for an Order providing a permanent injunction enjoining the City from continuing to physically delouse detainees at the City's House of Correction, also known as the Workhouse (the "jail"), and from continuing to strip search detainees in groups in the absence of appropriate privacy partitions/curtains.  ECF No. 110 at PageID #: 1542.[1]  The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law.  After an examination of the record, the Court determines that oral argument is not needed.  For the reasons set forth below, the motions are granted in part and denied in part.

---

[1] Inmates are incarcerated at the jail as pretrial detainees, civil commitments or for misdemeanors with sentences that cannot be more than one year.

(1:09CV2991)

## I. Background

### A.

As a preliminary matter, the Court notes that the Order (ECF No. 97), entered on October 26, 2015, provides, in pertinent part:

> Lead counsel of record are granted leave to confer with one another by telephone in order to prepare written stipulations as to all uncontested facts to be presented by the cross-motions for summary judgment.  The stipulations shall be filed with the Court on or before November 2, 2015.

ECF No. 97 at PageID #: 795.  No stipulations were filed.

### B.

This case involves booking procedures at the jail that Plaintiff contends are unconstitutional.  In July 2011, the Court granted Defendant's motion to stay the case until *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S.Ct. 1510 (2012), was resolved.  *See* Memorandum of Opinion and Order (ECF No. 52).  The *Florence* decision was handed down by the United States Supreme Court in April 2012.  Shortly after *Florence* was decided, the Court lifted the stay and instructed Plaintiff to file an amended complaint that added Shawn Bealer as an additional class representative.  *See* Order (ECF No. 58).  After filing an answer to the amended complaint, the City moved for judgment on the pleadings.  The Court subsequently denied Plaintiffs'[2] motion for leave to file a second amended complaint and entered

---

[2]  On December 15, 2015, the Court agreed with Defendant's unopposed suggestion that Plaintiff-Intervenor Shawn Bealer is not suitable to proceed as a class representative in this case.  *See* Order (ECF No. 120).

(1:09CV2991)

judgment on the pleadings in the City's favor. *Williams v. City of Cleveland*, No. 1:09CV2991, 2013 WL 5519403 (N.D. Ohio Sept. 30, 2013) (Pearson, J.) (ECF No. 79).  Plaintiffs appealed.

In November 2014, the Sixth Circuit reversed and remanded the case for further proceedings. *Williams v. City of Cleveland*, 771 F.3d 945 (6th Cir. 2014).  The Court of Appeals stated that this Court, "which opined that delousing naked inmates in a group 'is justified,' jumped the gun." *Id.* at 955.  The Sixth Circuit " held that a complaint "plausibly allege[s] a violation of the Fourth Amendment" "when it alleges that defendant's jail, instead of using less invasive procedures, compelled pretrial detainees who were being processed into the facility to undress in the presence of other detainees and to have their naked genitals sprayed with delousing solution from a pressurized metal canister." *Id.* at 947.  It stated this Court was mistaken in concluding that the particular manner in which Plaintiffs alleged they were seized and searched differed in only insignificant ways from the practices that were upheld in *Florence*. *Id.* at 949.  Pretrial detainees enjoy the Fourth Amendment's guarantee of "reasonable expectations of privacy." *Id.* at 950 (citing *Stoudemire v. Michigan Dept. of Corrections*, 705 F.3d 560, 572 (6th Cir. 2013).  "Given the significant incursion into plaintiffs' privacy rights caused by the jail's preferred method of searching and delousing them, the jail's need to perform the searches in this particular manner must be unusually dire before it can outbalance the affront to plaintiffs' privacy." *Id.* at 954 (citing *Florence*, 132 S.Ct. at 1516).

After considering the parties' Status Report and Stipulation (ECF No. 89), the Court scheduled (1) a date for Plaintiffs to serve and file a Second Amended Class Action Complaint, (2) a cutoff date to amend pleadings and add parties, (3) a cutoff date for the parties to serve

(1:09CV2991)

supplemental initial disclosures, (4) a discovery cutoff date, and (5) dates for the filing of cross-

motions for summary judgment.  *See* Order (ECF No. 92).  The parties agree that the issue of

municipal liability in the case at bar can be resolved by a decision on cross-motions for summary

judgment.  *See* Affirmation in Support (ECF No. 111) at PageID #: 1549-50, ¶ 7.  *See also* ECF

No. 89 at PageID #: 740, ¶ 4; ECF No. 92 at PageID #: 769, ¶ 5.

        Plaintiff is the purported representative for the class of all persons incarcerated at the jail

between December 26, 2007[3] and April 14, 2010.[4]  According to the Second Amended Class

Action Complaint (ECF No. 90), the City has a policy of strip searching and delousing each

person who enters the custody of the jail, regardless of whether jail officials have a reasonable

suspicion that the detainee has lice.  Detainees must remove their clothing in the presence of a

corrections officer, who then sprays delousing solution[5] from a pressurized metal canister on the

detainee's naked body, including on the detainee's exposed genitals.  City officials nicknamed

this procedure the "hose method."  Memorandum in Support (ECF No. 118) at PageID #: 1939;

Email Message, dated June 15, 2010, from Kathy Raleigh (ECF No. 111-14).

        Plaintiff was arrested in October 2009 on a non-felony charge of driving with a suspended

license.  Her license had been suspended because she failed to pay a traffic ticket.  Deposition of

---

        [3] This is the date alleged in the Second Amended Class Action Complaint (ECF No. 90), which is two years before the filing of the original complaint.  ECF No. 90 at PageID #: 747, ¶ 7.

        [4] The City stopped delousing detainees utilizing the "hose method" on this date. *See* Email Message, dated April 14, 2010, from Commissioner Jacqueline Lewis (ECF No. 111-15).

        [5] A brand of pediculicide called Liceall was used.

4

(1:09CV2991)

Tynisa Williams (ECF No. 109) at PageID #: 1471.  After Plaintiff made arrangements with authorities to pay her traffic ticket and fines, she was processed into the jail on October 28, 2009. There, she was instructed to undress and briefly shower in the presence of not only a corrections officer but also two other female detainees.  ECF No. 109 at PageID #: 1486,1492.[6]  All three detainees could see each other by virtue of being in the Clothing Room with no privacy partitions/curtains of any kind.  ECF No. 109 at PageID #: 1492-93.[7]  The compulsory physical delousing occurred in the shower area that is adjacent to the Clothing Room.  Deposition of Lt. Joseph Stottner (ECF No. 107) at PageID #: 1326-27.  This shower area has three shower stalls, and the delousing occurred in front of those shower stalls in the middle of the room near a drain. ECF No. 107 at PageID #: 1269-72.[8]  In the presence of the other detainees, who were standing side-by-side, Plaintiff was subjected to a visual body cavity search, during which she was instructed to squat down.[9]  A corrections officer misted her with delousing solution from an

---

[6] ECF Nos. 111-35, 111-38, and 111-41 are photographs of the Shower Room. ECF No. 111-35 shows the separate stalls with complete privacy partitions.

[7] Defendant argues that while it would be possible to install a partition in the Clothing Room, that partition poses a security risk and limits the view of the corrections officers.  ECF No. 118 at PageID #: 1949-50.

[8] ECF No. 111-42 is a diagram of the Shower Room, including measurements, prepared by Plaintiff's counsel.

[9] According to Defendant, "[t]he Sixth Circuit's opinion in this matter, though informative, was not based on the facts that have been developed in this record."  ECF No. 118 at PageID #: 1959.  Plaintiff alleges that she was instructed to spread her buttocks.  ECF No. 90 at PageID #: 754, ¶ 36.  According to Defendant, Plaintiff does not state in her deposition that she was asked to spread her buttocks.  ECF No. 118 at PageID #: 1941.

(1:09CV2991)

exterminator can all over her naked body, including into her anus.  ECF No. 109 at PageID #: 1496-99.  Given the layout of the shower area,  Detainees could see one another.  ECF No. 107 at PageID #: 1269-72.  There was no indication that Plaintiff was harboring lice.  Deposition Jacqueline Lewis (ECF No. 105) at PageID #: 1215-1216; ECF No. 107 at PageID #: 1299-1300.  Plaintiff  was released from the jail the same day.  ECF No. 109 at PageID #: 1507-10.

Based on these allegations, Plaintiff asserts four claims requesting damages as well as declaratory and injunctive relief under § 1983.  The First Cause of Action is for unreasonable search and seizure under the Fourth Amendment related to strip searches and the "compulsory delousing of individuals arrested for misdemeanors or violations absent some particularized suspicion that the individual in question has either contraband or weapons."  ECF 90 at PageID #: 757, ¶ 51.  The Second Cause of Action is brought pursuant to the Fourth and Fourteenth Amendments (in part) for the alleged imposition of unnecessary medical treatment in reference to the compulsory delousing procedure.[10]  The Third and Fourth Causes of Action seek declaratory

---

[10]  The Sixth Circuit footnoted that "Plaintiffs appear to have abandoned any argument with respect to the second cause of action noted in their proposed second amended complaint." *Williams*, 771 F.3d at 956 n. 1.  Plaintiff declares in her Reply Memorandum that her claim for involuntary medical treatment is withdrawn.  ECF No. 121 at PageID #: 2038.  The pre-filing written exchange required by the Court's prior Orders (ECF No. 92 at PageID #: 769, ¶ 5 and ECF No. 97 at PageID #: 793) should have obviated the need for the Court's attention to be drawn to an unopposed argument.

Because Plaintiff failed to meet her burden in opposing summary judgment on her claim for the alleged imposition of unnecessary medical treatment in reference to the compulsory delousing procedure, Plaintiff has abandoned this claim and waived any argument concerning dismissal of such claim.  *Hicks v. Concorde Career Coll.*, 449 Fed.Appx. 484, 487 (6th Cir. 2011) (finding that "[t]he district court properly declined to consider the merits of [plaintiff's] claim because [plaintiff] failed to address it in . . . his response to the summary judgment motion"); *see also, e.g.*, *Hadi v. State Farm Ins. Cos.*,

(continued...)

6

(1:09CV2991)

judgment and a preliminary and permanent injunction based on the facts in the First and Second

Causes of Action.

## II.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and

disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required

to file affidavits or other similar materials negating a claim on which its opponent bears the

burden of proof, so long as the movant relies upon the absence of the essential element in the

pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has

failed to establish an essential element of his case upon which he would bear the ultimate burden

of proof at trial."  *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving

party to demonstrate the existence of a genuine dispute.  An opposing party may not simply rely

on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be

resolved by a jury."  *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The

---

[10](...continued)
2:07-CV-0060, 2008 WL 4877766, at *13 (S.D. Ohio Nov. 12, 2008) (finding plaintiff's
failure to respond with any evidence supporting his negligent infliction of emotional
distress claim "apparently concedes that summary judgment is proper on this count.").
Therefore, Defendant's Motion for Summary Judgment (ECF No. 118) with respect to
this claim is granted for the reasons articulated by Defendant.  *See* ECF No. 118 at
PageID #: 1956-59.

(1:09CV2991)

non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.* This standard of review does not differ when reviewing cross-motions for summary judgment versus a motion filed by only one party. *U.S. SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

(1:09CV2991)

### III.  Analysis

Under *Florence*, there is no longer any question that individualized suspicion is unnecessary to conduct blanket strip searches and to delouse prisoners at intake.  132 S.Ct. at 1518.  The method of the strip search and the delousing are, however, still subject to constitutional evaluation.  In answering the question of whether a blanket policy of strip searching incoming inmates was constitutionally sound, *Florence* answered by holding that the "undoubted security imperatives involved in jail supervision override the assertion that some detainees must be exempt from the more invasive search procedures at issue absent reasonable suspicion of a concealed weapon or other contraband."  *Id.*

#### A.      Physical Delousing Claim

Plaintiff "not only complain[s] about the use of delousing on all detainees, but also about the manner in which the delousing occurs."  ECF No. 90 at PageID #: 745.  In particular, Plaintiff alleges that the City violated detainees' constitutional rights by spraying delousing solution all over their naked bodies, "specifically aim[ing]" it at the face and genitals, instead of using less invasive delousing methods, such as permitting detainees to apply the delousing solution to themselves.  ECF No. 90 at PageID #: 749, ¶ 12.  Several other penological facilities permit the self-application of delousing solution in the manner that Plaintiff requests.  *See e.g.*, *Florence, 132 S.Ct. at 1514*; *Russell v. Richards, 384 F.3d 444, 446 (7th Cir. 2004)*.  Plaintiff also alleges that her strip search and delousing were unreasonable because it was conducted in the presence of two female detainees.  ECF No. 90 at PageID #: 758, ¶ 54.  Thus, Plaintiff alleges not only that the jail lacked justification for the search and seizure in the first place, but also that the

9

(1:09CV2991)

particular manner in which the jail conducted its compulsory delousing regime was unreasonable, "given more dignified alternatives." ECF No. 90 at PageID #: 753, ¶ 30.  In *Florence*, the Supreme Court stated that "[t]he danger of introducing lice or contagious infections . . . is well documented ." 132 S.Ct. at 1518 (citations omitted).  In the case at bar, the Sixth Circuit declared "the pertinent question is not whether the jail has a general need to prevent the introduction of lice into its facility (obviously, it does) but whether the jail's selection of the particular procedures to which it subjected plaintiffs is reasonably related to that legitimate end." *Williams*, 771 F.3d at 954 (citing *Stoudemire, 705 F.3d at 573*).

> According to the Sixth Circuit,
>
> [b]ecause the focus must be on the jail's interest in carrying out the search and seizure in the particular manner that it chose, *see Florence*, 132 S.Ct. at 1516, the analysis in this case must balance the detainees' privacy rights against the jail's specific interest in spraying them with delousing agent from a pressurized canister while they crouched naked in the presence of other detainees instead of using less invasive procedures to achieve the same end.

*Id.* at 952.  Defendant recounts the "hose method" as not involving physical touching by corrections officers themselves.  ECF No. 118 at PageID #: 1940.  The Sixth Circuit found "the distinction is unconvincing." *Id.*  Contrary to paragraphs 12 and 25 of the Second Amended Class Action Complaint (ECF No. 90),[11] Plaintiff testified in deposition that the delousing was a

---

[11]    12. . . . The City employs the "hose treatment," where detainees are forcibly sprayed with delousing solution from the hose [of] an exterminator can.  The effluent from the "hose treatment" is specifically aimed at the face and genitals of detainees. . . .

25.  Furthermore, the City's method of delousing detainees,

(continued...)

10

(1:09CV2991)

light spray, like a body mist that only lasted a few seconds.  ECF No. 109 at PageID #: 1519,

1492.  Defendant compares the procedure to the application of bug spray, perfume or a spray tan.

ECF No. 118 at PageID #: 1940.

Plaintiff also alleges that the delousing solution penetrated her anus.  ECF No. 90 at

PageID #: 755, ¶ 36.  Defendant argues that while there is little doubt that the delousing liquid

ran down Plaintiff's buttocks and likely over her anus, it is very hard to believe that the solution

managed to actually penetrate her body because she testified as follows:

| | |
|---|---|
| Q | You said that the delousing solution was like a body mist.  Was it a light mist like that? |
| A | Yes. |
| Q | So it didn't hit you with any kind of force? |
| A | No. |
| Q | Okay.  Did you feel it hitting you? |
| A | Yes. |
| Q | Did you feel it just because it was a liquid and cold? |
| A | Liquid and it was cold. |

ECF No. 109 at PageID #: 1519.

The City admits that until April 14, 2010 it required physical delousing of all detainees

admitted to the custody of the jail as a matter of municipal policy.  ECF No. 118 at PageID #:

1938; Deposition of Lt. Stella Clark (ECF No. 101) at PageID #: 1006-1007; ECF No. 105 at

---

[11](...continued)
    the "hose treatment," is both offensive and absurd. Forcibly
    spraying the genitals of detainees, versus allowing
    detainees to apply the delousing solution themselves, is the
    hallmark of an abusive and unnecessary jail policy. . . .

(1:09CV2991)

PageID #: 1215-16.[12]  At the time of this writing, there is no blanket procedure for delousing

inmates.  Deposition of David Carroll (ECF No. 99) at PageID #: 968.  A new less intrusive

policy regimen was employed following the cessation of delousing.  Now, corrections officers

immediately send detainees, who are suspected of having lice, to the Workhouse medical unit for

assistance.  Deposition Lt. Reginald Flowers (ECF No. 103) at PageID #: 1148-49; Divisional

Notice Regarding Intake Delousing (ECF No. 111-13).  Plaintiff is only asking the Court to

require the City to follow its current policies, and not revert back to the older, offensive practices.

Memorandum in Support (ECF No. 112) at PageID #: 1698.[13]

Defendant asserts the delousing solution was applied to Plaintiff by a nozzled hose

affixed to a pressurized canister that resembled an exterminator's can because it is the experience

of the officials at the jail that inmates only follow orders 50% of the time and spraying a

delousing agent will likely be more effective and will result in fewer altercations with inmates

than allowing the inmate to apply a delousing solution themselves.  ECF No. 118 at PageID #:

1952.  David Carroll testified:

---

[12]  This compulsory physical delousing regimen was also reflected in the City's
written policies.  *See* Workhouse Post Order (ECF No. 111-8) at PageID #: 1619
(corrections officer "[a]ssures that inmates shower and are sprayed with appropriate
antiseptic or are referred to the medical staff for delousing prior to putting on institutional
clothing."); Workhouse Hygiene and Clothing Policy (ECF No. 111-12) at PageID #:
1635 ("Showering and delousing is required prior to being issued institutional clothing.").

[13]  Jacqueline Lewis, a former supervisor of the jail, the City's Rule 30(b)(6)
deponent, indicated that she believes the former physical delousing policy to be fine, and
would consider reinstituting it at the end of this litigation.  ECF No. 105 at PageID #:
1215.

(1:09CV2991)

> Q.       . . . Do you feel in your experience as the acting commissioner for the department of corrections over the past four years that in general when you give inmates instructions, they listen to you?
>
>            MS. DINEHART:  Objection.
>
> A.       Somewhat.  It's probably 50/50.

ECF No. 99 at PageID #: 938.  Defendant's justification for physically delousing detainees, as opposed to allowing them to apply delousing solution to themselves is that corrections officers could not "trust" inmates to perform the procedure properly.  ECF No. 101 at PageID #: 1067; ECF No. 105 at PageID #: 1202-1203.  But, "[s]imply spraying the detainee with a hose as if she was an object or an animal treats her as if she does not have the capacity to make [the] choice" to self-apply the solution.  *Williams*, 771 F.3d at 955.[14]  Moreover, the City's argument regarding an alleged lack of compliance by detainees as a justification for the delousing regimen is contradicted by the testimony of other corrections officials, who admitted that their instructions were nearly always followed by detainees in both the Shower Room and Clothing Room, even when they were using the "hose method."  *See, e.g.*, Deposition of Rufus Williams (ECF No. 108) at PageID #: 1416-18, 1446.

Plaintiff testified that she was not allowed to shower after the application of the delousing solution.  ECF No. 109 at PageID #: 1507.  Nevertheless, the record does not reveal that the delousing inspired a need to shower.  Despite being released shortly after processing was completed, Plaintiff did not shower for hours.  She took her son trick-or-treating, put her son to

---

[14]  Defendant argues that in *Williams*, the Sixth Circuit exhibited "a bizarre misunderstanding of the importance of sanitation within a jail facility and in fact the entire purpose behind compulsory delousing, of the type deemed a valid penological interest in *Florence*."  ECF No. 118 at PageID #: 1953.

(1:09CV2991)

bed, and showered as she normally did before bed.  ECF No. 109 at PageID #: 1511.   Plaintiff

testified to having a vaginal infection that she treated at the hospital a couple of days after

release.  ECF No. 109 at PageID #: 1512.  She has no proof the infection was related to the

delousing.  ECF No. 109 at PageID #: 1499-1501.  Plaintiff has not submitted any documentation

linking the delousing solution to her infection.  She has suffered from these infections at other

times.  ECF No. 109 at PageID #: 1512-13.

Defendant argues that the inmates were instructed to shower after the delousing agent was

applied.  ECF No. 101 at PageID #: 1028; ECF No. 107 at PageID #: 1277.  Defendant declares

that "[t]here are material issues of fact in this suit, but asserts that [its Cross-Motion for

Summary Judgment] can be determined based on Plaintiff's telling of her experience at the

House of Corrections."  ECF No. 118 at PageID #: 1939.

Defendant cites a reported case from a district court in Pennsylvania in its discussion of

alternatives to the "hose method."  In *Logory v. Cnty. of Susquehanna*, 277 F.R.D. 135,

(M.D.Penn. 2011), the district court deferred to the discretion of jail administrators and found

that a delousing spray was not so different from a facility using a lice shampoo.  Quoting the

Third Circuit opinion in *Florence*,[15] *Logory* stated:

> *Florence* held explicitly that "the strip search procedures . . . at [the Prisons] are
> reasonable."  *Id.* at 311.  As those procedures explicitly included a delousing, it is
> curious as to how Plaintiff could maintain a class premised on an alleged Fourth
> Amendment violation that involv[es] the very same procedures.  Plaintiff attempts
> to play up the differences between the two procedures, that *Florence* utilized a
> self-applied shampoo followed by a supervised shower while the instant case
> concerns a delousing spray followed by an unsupervised shower.  It is true that

---

[15] 621 F.3d 296 (3rd Cir. 2010).

14

(1:09CV2991)

> Fourth Amendment reasonableness is a fact-specific inquiry, "not capable of precise definition or mechanical application." *Id.* at 301 (citing *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).  However, the Court agrees with the Defendant that these are *de minimis* differences that do not materially alter the Fourth Amendment analysis.

*Id.* at 142.  As a result, in *Logory*, the court found that the plaintiff could not sustain a class action for a Fourth Amendment violation.  *Id.*

The Sixth Circuit has determined that permitting self-application of a delousing solution like that which was used in *Florence* "could be readily implemented at the jail without compromising the jail's interest in preventing lice infestations." *Williams*, 771 F.3d at 955. Therefore, the jail's employment of the "hose method," to which Plaintiff was subjected, is not reasonably related to the legitimate end of preventing the dissemination of lice in its facility. This delousing procedure employed until April 14, 2010 does not pass constitutional muster. The application of the delousing solution in this manner is not a rational response to the jail's legitimate interest in preserving health and well-being within the facility, given other less humiliating and invasive alternative methods to eradicate lice, such as permitting detainees to self-apply a delousing solution.  The "hose method" may be reserved for instances where individual detainees misapply or refuse to properly apply the provided solution.  *Id.* at 954.

### B.    Group Strip Search Claim[16]

---

[16]  The Second Amended Class Action Complaint (ECF No. 90) does not mention group strip searches in the proposed class definition.  *See* ECF No. 90 at PageID #: 747, ¶ 7.  Paragraph 54 of the Second Amended Class Action Complaint states, however, that "Plaintiffs' rights were [ ] violated because their strip searches *and* delousing occurred in the presence of other detainees."  ECF No. 90 at PageID #: 758 (emphasis added). Plaintiff will, however, seek to address group strip searches when she moves the Court

(continued...)

15

(1:09CV2991)

"The same analysis applies to the jail's decision to strip search and delouse plaintiffs in full view of other detainees." *Williams*, 771 F.3d at 955. "Whether the particular manner in which the jail conducted the searches and seizures at issue here was 'justified' depends on the facts, such as 'whether any exigent circumstances compelled [the officers] to strip search [plaintiffs] in view of other inmates.'" *Id.* (quoting *Stoudemire*, 705 F.3d at 573-74). As stated by the Sixth Circuit in *Salem v. Michigan Dept. of Corrections*, 643 Fed.Appx. 526 (6th Cir. 2016):

> Whether a prison search is constitutionally reasonable depends on "whether the jail's 'need for the particular search' outweighs 'the invasion of personal rights that the search entails.'" *Williams*, 771 F.3d at 950 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Stoudemire*, 705 F.3d at 572). In making this determination, we "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted," *id.* (quoting *Bell*, 441 U.S. at 559, 99 S.Ct. 1861), while also examining "obvious, easy alternatives" that accommodate the inmate's privacy interests at little cost to valid penological objectives, *id.* (quoting *Turner v. Safley*, 482 U.S. 78, 90-91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).
>
> . . . searches conducted in view of other inmates—who "do not share the searching officers' institutional need to view [another prisoner] unclothed"—are exceedingly intrusive. *Williams*, 771 F.3d at 953. . . .

*Id.* at 530. "Applying this test, the [Sixth Circuit] has held that strip searches performed in view of other inmates without a legitimate penological justification violate inmates' clearly established

---

[16](...continued)
for class certification. ECF No. 121 at PageID #: 2034. *See Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint.").

(1:09CV2991)

Fourth Amendment rights."  *Salem*, 643 Fed.Appx. at 530 (citing *Williams*, 771 F.3d at 952-56;

*Stoudemire*, 705 F.3d at 572-75).

On the other hand, "[p]rison administrators . . . should be accorded wide-ranging

deference in the adoption and execution of policies and practices that in their judgment are

needed to preserve internal order and discipline and to maintain institutional security."  *Bell*, 441

U.S. at 547.  "[W]here a particular search or seizure involves significant intrusion into a

detainee's privacy interests, the existence of 'obvious, easy alternatives . . . that fully

accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests' suggests

that the institution's need to proceed in its chosen manner does not outweigh the burdens it

imposes upon the detainee and is therefore unreasonable."  *Williams*, 771 F.3d at 950 (quoting

*Turner*, 482 U.S. at 90-91).  Defendant argues it has good reasons for conducting the blanket

group strip searches in the jail in the particular manner in which it does, instead of strip searching

one detainee at a time.  Administrative convenience is among the reasons.  ECF No. 118 at

PageID #: 1949.

Plaintiff was required to submit to a strip search in the presence of two other female

detainees.  ECF No. 109 at PageID #: 1486, 1492.  She was required to remove her clothing,

including her underclothes and brassiere while under the visual observation of a female

corrections officer, for the specific purpose of detecting contraband.  ECF No. 109 at PageID #:

1486, 1492; Deposition of Mary Bounds (ECF No. 98) at PageID #: 850, 852-53.  The City

contends that Plaintiff and the two other inmates were standing side-by-side in the private

17

(1:09CV2991)

Clothing Room[17] during the search (ECF No. 109 at PageID #: 1494-96, 1497), but squatted one-by-one while still in line so that the inmates were not able to see each other's genitalia without taking effort to move out of the position in which they were placed by the corrections officer, effort that Plaintiff does not recall having been taken by another inmate during her search (ECF No. 109 at PageID #: 1516).  ECF No. 118 at PageID #: 1942.

The justification put forward by Defendant for requiring detainees to disrobe in each other's presence is that the jail was "busy," and corrections officers need to strip search multiple detainees for expediency.  ECF No. 108 at PageID #: 1381, 1384.  However, Lt. Clark admitted that, while it may "slow things down just a little bit," detainees could easily be strip searched individually versus as part of a group.  ECF No. 101 at PageID #: 1066-67.  Evidence of the regulation's impropriety exists when "there are ready alternatives available to the regulations in question that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests," that go untapped.  *Spies v. Voinovich*, 173 F.3d 398, 404 (6th Cir. 1999).

The State of Ohio recommends the use of modesty panels.  The Ohio Corrections Officer Basic Training Manual provides, in pertinent part:

> 2.      Based on several lawsuits on these kinds of cases, there are some general
>         rules
>                                    *    *    *
> c.      Search area should provide privacy from outside observation
>         1.      Modesty panels are inexpensive and effective
>         2.      Use of these panels demonstrates good faith of a
>                 department to conduct searches in a constitutional manner

---

[17]  ECF Nos. 111-26, 111-28, and 111-29 are photographs of the Clothing Room. ECF No. 111-33 is a diagram of the Clothing Room, including measurements, prepared by Plaintiff's counsel.

(1:09CV2991)

ECF No. 111-18 at PageID #: 1646.  The City does not explain how the installation of modesty panels in the Clothing Room at the jail could not be accomplished should there be a legitimate need for strip searching multiple detainees.

Upon examining the evidence, the Court finds that, under the particular circumstances at the City's House of Correction, the corrections officers implementing the group strip searches did not strike a reasonable balance between Plaintiff's privacy interests and the need to provide safety and security at the jail.  Therefore, the Court finds the visual strip search at the jail violated Plaintiff's constitutional rights.  Defendant can perform searches one at a time or in multiples with appropriate privacy partitions to allow detainees to remove their clothing without being viewed by other detainees, while still being observed by a corrections officer.[18]

### C.    Injunction

Four factors must be considered when deciding whether to grant an injunction:  (1) whether the movant has a strong likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the movant; (3) whether others will suffer substantial harm as a result of the injunction, should it issue; and (4) whether the public interest will be served by the injunction.  See *Rock & Roll Hall of Fame and Museum, Inc. v. Gentile Prods.*, 134 F. 3d 749, 753 (6th Cir. 1998).  In the prison litigation context, the Prison Litigation Reform Act ("PLRA") requires that the injunctive relief requested must be narrowly drawn, and be the least intrusive means to correct the violation. *Hadix v. Caruso*, 420 Fed.Appx. 480, 481-82 (6th Cir. 2011)

---

[18]  During his deposition, Former Jail Manager Joseph Stottner, agreed to this scheme when shown a photograph (ECF No. 111-32 ) of Plaintiff's counsel's rendering of  where a privacy partition could be installed.  ECF No. 107 at PageID #: 1334-37.

(1:09CV2991)

(citing 18 U.S.C. § 3626(a)(1)(A)).  "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 274 F.3d 377, 387 (6th Cir. 2001) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). This is especially so where the defendant has expressed the possibility of reenacting the challenged policy. *Id.*

Plaintiff requests that the Court grant her request for a permanent injunction.  In the alternative, should the Court believe that there are disputed issues of fact precluding Plaintiff's entitlement to summary judgment, she requests that the Court grant her a preliminary injunction so that Defendant's "abhorrent" policies can be held in abeyance until this matter is tried before the Court.  ECF No. 112 at PageID #: 1698.  In view of the above, the Court finds Plaintiff has demonstrated all of the factors that a court must consider when deciding whether to issue an injunction.  Plaintiff is, therefore, entitled to a permanent injunction enjoining the City from (1) reinstituting the "hose method" and (2) conducting group strip searches in the Clothing Room without the installation of appropriate privacy partitions to obstruct the view by other inmates of another unclothed inmate.

## IV.  Conclusion

Viewing the probative evidence and all reasonable inferences drawn therefrom,

Plaintiff's Motion for Summary Judgment and Permanent Injunction (ECF No. 110) is granted in part and denied in part; and

20

(1:09CV2991)

Defendant's Motion for Summary Judgment (ECF No. 118) is granted in part and denied in part.

The issue of municipal liability in the case at bar is hereby resolved by the within decision.  The cross-motions for summary judgment are denied in part due to the fact that they were filed prior to the Court's determination that Plaintiff-Intervenor Shawn Bealer is not suitable to proceed as a class representative in this case.

Defendant's Motion for Summary Judgment (ECF No. 118) is granted with respect to the alleged imposition of unnecessary medical treatment in reference to the compulsory delousing procedure as set forth in the Second Cause of Action.

The claim and factual assertions in the Second Amended Class Action Complaint that a Workhouse inmate sprayed Shawn Bealer with delousing solution and directed him to shower is dismissed.  *See* ECF No. 90 at PageID #: 756, ¶ 47.

The parties shall settle on the form of the permanent injunction forthwith.  In the absence of agreement on form, Plaintiff shall present a form of injunction to the Court, in not later than fourteen (14) days from the date of this Order.


      IT IS SO ORDERED.


  September 28, 2016                     */s/ Benita Y. Pearson*        
Date                                 Benita Y. Pearson
                                     United States District Judge